## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARSHA SENSENIG, on behalf of herself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case. No.: 3:16-CV-50022** |
| **MERRICK PET CARE d/b/a CASTOR AND POLLUX NATURAL PETWORKS, and NESTLE PURINA PET CARE, CO.,** | ) ) ) ) | |
| **Defendants.** | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT

This class action stems from Defendants' marketing and selling of pet foods labeled as "Made with Love IN THE USA" when the products contain substantial ingredients sourced from foreign countries. Plaintiff brings this class action under the laws of Illinois and the similar laws of other states on her own behalf and on behalf of all others similarly situated.

### I.

### Parties, Jurisdiction, and Venue

1.     Plaintiff Marsha Sensenig is an adult resident citizen of Lee County, Illinois, which is within this district and division.

2.     Defendant Nestle USA, Inc., is a corporation formed under and existing pursuant to the laws of the state of Delaware. This Defendant's principal offices are in Glendale, California.

3.     Defendant Nestle Purina Petcare Company is a corporation formed under and existing pursuant to the laws of the state of Missouri. This Defendant's principal offices are in St. Louis, Missouri.

4.     Defendant Merrick Pet Care Company, before July 21, 2015, was a corporation formed under and existing pursuant to the laws of the state of Texas, with its principal offices in Hereford, Texas. On or around July 21, 2015, Defendant Merrick Pet Care Company was purchased by either Defendant Nestle Purina Petcare Company or Defendant Nestle USA, Inc., pursuant to a non-public purchase agreement. Merrick Pet Care still holds itself out as a stand-alone company on its website, http://www.merrickpetcare.com (last accessed on September 8, 2015), but plaintiff does not know the current corporate relationship among the Defendants.

5.      Because there is diversity between Plaintiff and the Defendants, and because the aggregate amount in controversy for the class claims exceeds $5,000,000, exclusive of interest and costs, diversity jurisdiction exists under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005.

6.     Defendants sold, and plaintiff bought, the Ultramix dog food product in this district and division, so venue is appropriate under 28 U.S.C. § 1391(b)(2) as

2

a substantial part of the conduct giving rise to this action occurred in this district and division.

## II.

### Factual Background

7.       Defendant Nestle Purina Petcare Company ("Nestle Purina"), which describes itself on its website to be "the pet care division of Nestle S.A.," manufactures and sells many forms of pet food in stores all over the United States, including Illinois. Among other places, it sells its products in large pet store chains including Petco and Petsmart.

8.       Nestle Purina purchased an organic pet food company called Merrick Pet Care ("Merrick"), which had previously purchased a company Castor & Pollux Natural Petworks ("C&P"), and continued to market pet food under the "C&P" label.

9.       These products, still made either by Merrick, by C&P or directly by Nestle Purina, include the Ultramix and Organix brands pet food.

10.       On several occasions within the applicable limitations period, Plaintiff Marsha Sensenig purchased Defendants' Ultramix Grain Free & Poultry Free Adult Dog Food brand dog food for household use, specifically, to feed her dog.

11.       The label of all of Defendants' Ultramix and Organix brand products, including Ultramix Grain Free & Poultry Free Adult Dog Food, contains a label proclaiming that the products are "Made with Love IN THE USA."



12.     The labels stating that Defendants' pet food is made in the United States are false because Defendants' pet food contains ingredients sourced from foreign countries. As one example, these products contain tapioca, a gluten-free starch made from the cassava root, which is not grown commercially in the United States. The

4

tapioca contained in Defendants' Ultramix pet food comes from foreign countries. In addition, Defendants' pet food products vitamin, mineral, and amino acid packs sourced outside the United States.

13.    Defendants placed these misleading and inaccurate labels on their products with the intention that Plaintiff and other consumers would rely on them.

14.    Plaintiff is an unsophisticated consumer who purchased the product for household use.

15.    Plaintiff is also a patriotic American who prefers to purchase goods made in the United States rather than imported goods, and who is willing to pay a premium for American-made goods. In this regard, Plaintiff is similar to other American consumers who are willing to pay more for American-made goods.

16.    A 2015 survey by Consumer Reports magazine found that almost 80% of Americans are willing to pay more for American-made goods.

> This month … we examine one of the nation's most ubiquitous labels: Made in America. It's a phrase that wields real power in the marketplace. A recent Consumer Reports survey found that 77% of Americans are willing to pay more for a product that has the claim.

"What does the 'Made in America' label really mean?" Consumer Reports, July 2015, available at www.consumerreports.org/cro/magazine/2015/07/from-our-president-july-2015/index.htm.

17.    Research by the American Marketing Association, published in the Journal of International Marketing, confirms these finding:

> Our findings show that consumers not only prefer and assign a higher value to branded products from a country of origin with a favorable country image but also are willing to spend more money to obtain them.

"Consumers will pay more for a 'Made in the USA' label," Journal of International Marketing, March 2016, summary available at www.ama.org/publications/Journal OfInternationalMarketing/Pages/pr_jim.10.0140.aspx.

18.     Consumer preference for pet foods and treats that are made exclusively in the United States also stems from the widely-publicized and widespread recall of pet foods in 2007, when hundreds, and perhaps thousands, of dogs died of renal failure after being fed pet foods containing gluten sourced from China that turned out to be adulterated with toxic chemicals. Defendant Nestle Purina is more than aware of this episode resulting from foreign-sourced ingredients, because this Defendant's Alpo wet dog food was one of the brands recalled after it was discovered Alpo contained adulterated China-sourced gluten.

19.     Plaintiff Marsha Sensenig saw the misleading labels prior to purchasing the items and relied upon them, believing that the "Made With Love IN THE USA" labels meant that the manufacturers followed the legal standard for such labeling.

20.     Illinois law requires that "consideration shall be given to the interpretations of the Federal Trade Commission" concerning unfair or deceptive trade practices. 815 ILCS 505/2. "In determining whether a given course of conduct is unfair, we observe that the Consumer Fraud Act mandates that 'consideration shall

be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.'" Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002).

21.     Attached hereto as Exhibit "A" is the Federal Trade Commission's ("FTC") Enforcement Policy Statement on U.S. Origin Claims. This document provides guidance to manufacturers and merchants regarding the use of "Made in USA" and similar claims in marketing and advertising.

22.     As this guidance makes clear, a claim that a product is made in the USA can be express or implied. Defendants, use of the words "Made With Love IN THE USA" constitute an express claim of domestic origin.

23.     For a product to be called American-made or claimed to be of domestic origin, without qualifications or limits on that claim, the product must be "all or virtually all" made in the United States. The term "United States," as used in the Enforcement Policy Statement, includes the 50 states, the District of Columbia, and all U.S. territories and possessions. "All or virtually all" means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no – or negligible – foreign content.

24.     When a manufacturer or marketer makes an unqualified, express claim that a product is American-made, it should have and rely on a "reasonable basis" to support the claim at the time it is made. This means a manufacturer or marketer

7

needs competent and reliable evidence to back up the claim that its product is "all or virtually all" made in the United States.

25.     In a Federal Register notice, the Customs Service indicated that, where a product has foreign origin, any references to the United States would be considered misleading to the ultimate purchaser and would require foreign country-of-origin marking in accordance with 19 C.F.R. § 134.46 62 Fed. Reg. 44,211, 44,213 (1997).

26.     Plaintiff has suffered damages because she paid more for the products than they were actually worth. She believed the products to be made in the USA and relied upon that in her purchase decision. Recalls of pet food, often because of adulterated foreign-sourced ingredients, have been rampant in recent years. These recalls have made the news and resulted in public desire for safe pet foods with ingredients sourced in the United States. Recalls as recent as this month were issued because of contamination with listeria bacteria, salmonella, propylene glycol (an ingredient not approved for cat foods because of toxicity), mold, Amantadine (an antiviral human drug not approved for use in animal food), elevated and toxic levels of Vitamin D, heavy metals, and others. An incomplete list of these recent headline-making recalls may be found at http://truthaboutpetfood.com/category/pet-food-recalls/.

27.     In addition Plaintiff was damaged in the fact that she did not receive the benefit of the bargain she intended make in purchasing Defendants, products, which

included supporting American jobs, American manufacturing, and the American economy by purchasing products legally authorized to be labeled as made in the USA.

28.     Defendants sell other pet foods, including dog foods and cat foods, that also are labeled "Made in the U.S.A." but contain ingredients manufactured and sourced in foreign countries. These foreign-sourced ingredients include, without limitation, tapioca and vitamin C. Those products were also not "all or virtually all" made in the USA. Like the products Plaintiff purchased, those products contained significant ingredients sourced outside the USA.

29.     Plaintiff will continue to be damaged by Defendants false marketing and labeling of products as made in the USA. Defendants market a wide variety of pet foods under multiple brands, some of which do not even bear Defendants' names. Because of Defendants' misrepresentations, Plaintiff cannot know whether labels claiming to be made in the USA are accurate on any of these products.

### III.

### Class Allegations

30.     Plaintiff brings this action on her own behalf and on behalf of others similarly situated as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiff seeks to represent is composed of and defined as:

> All persons in states which have enacted the Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, or any act similar in substance, who, within the applicable limitations period, have purchased pet foods manufactured and marketed by Defendants and labeled "Made in the U.S.A." or were otherwise labeled as "USA-sourced" items.

The Illinois laws in question are 815 ILCS 510/2 and 815 ILCS 505/2. The other states with similar if not identical law are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. In Mullins v. Direct Digital, LLC, the plaintiff sought to represent a similar class, including all nine states that Plaintiff seeks to include here. 795 F.3d 654 (7th Cir. 2015). The Seventh Circuit affirmed certification of the multi-state class alleging violations of these laws in Mullins. Id.

31.     Alternatively, if the Court does not certify the above class, Plaintiff seeks to represent the following Illinois-only class:

> All Illinois residents who, within the applicable limitations period, have purchased pet foods manufactured and marketed by Defendants and labeled "Made in the U.S.A." or were otherwise labeled as "USA-sourced" items.

32.     This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure,

and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements thereof.

33.     Defendants market their pet foods in major retail stores throughout the United States as well as on the Internet. Therefore, the plaintiff class is so numerous that the individual joinder of all members is impracticable. The class meets the numerosity requirement of Fed. R. Civ. Proc. 23(a)(1).

34.     Common questions of law and fact, including whether Defendant's pet foods contain ingredients manufactured and sourced from foreign countries, exist in this case. The class meets the commonality requirement of Fed. R. Civ. Proc. 23(a)(2).

35.     Plaintiff's claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The Plaintiff and all members of the class sustained damages arising out of Defendants' course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

36.     The Plaintiff named herein will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests which are adverse to the interests of absent class members. Plaintiff, like all class members, purchased pet foods falsely labeled "Made in the U.S.A."

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. Proc. 23(b) because individual joinder of all class members is impracticable. Furthermore, because the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. Individual litigation would likewise burden the court system to a much greater degree than a class action, and would present the potential for inconsistent or contradictory judgments. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## IV.

## Claims for Relief

## COUNT 1

## Violation of Uniform Deceptive Trade Practices Act

38.     Plaintiff incorporates by reference paragraphs 1-36 of this Complaint as if fully set forth herein.

39.     The Uniform Deceptive Trade Practices Act, codified in Illinois at 815 ILCS 510/1 et seq., makes it a deceptive trade practice to use "deceptive

representations or designations of geographic origin in connection with goods or services." 815 ILCS 510/2(a)(4).

40. Defendants violated 815 ILCS 510/2(a)(4) by labeling and marketing its pet foods as made in the USA when, in fact, they were not.

41. Defendants has violated this section repeatedly and willfully, intentionally using "Made in the U.S.A." labels to confuse and defraud shoppers.

42. Plaintiff, and the class she represents, are entitled to injunctive relief as well as costs and attorneys' fees under 815 ILCS 510/3.

## COUNT 2

## Violation of Illinois Consumer Fraud and Deceptive Business Practices Act

43. Plaintiff incorporates by reference paragraphs 1-36 of this Complaint as if fully set forth herein.

44. 815 ILCS 505/2 makes it an unfair or deceptive act or practice to engage in any activity that violates 815 ILCS 510/2. Because Defendants violated 815 ILCS 510/2(a)(4), it also violated 815 ILCS 505/2.

45. Under 815 ILCS 505/2, the "Made in the USA" statements by Defendants constituted a deceptive act or practice. The "Made in the USA" statements were made and the purchases occurred in trade or commerce. Defendants intended that Plaintiff and the rest of the class rely on the statements. The deception caused damage to Plaintiff and the class.

46.     Plaintiff, and the class she represents, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

## COUNT 3

## Claims Under Similar State Statutes

47.     Other states have deceptive trade practices acts which, as they apply to the facts at issue here, are in substance the same as the Acts referenced in Counts 1 and 2, prohibiting the conduct detailed herein. The other states with similar if not identical law are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq.  On behalf of the plaintiff class, Plaintiff asserts claims under those statutes as well for class members residing in those states.

48.     On behalf of the out-of-state class members, Plaintiff seeks actual damages, punitive damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief:

A) An order certifying this as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B) An order appointing Plaintiff's counsel as Class Counsel to represent the interests of the class;

C) After trial, an injunction ordering Defendants to stop its violations of law as alleged herein;

D) After trial, an award of compensatory and punitive damages;

E) An award of costs, including reasonable attorneys' fees; and

F) Such further or different relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by struck jury on all counts.

Respectfully Submitted,

/s/ John E. Norris
John E. Norris
One of the Attorneys for Plaintiff

**OF COUNSEL:**
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

Julie Simpson
SIMPSON LAW GROUP
100 Illinois Street
St. Charles, IL 60174
Telephone: 630.797.2222
jsimpson@simpsonlawgroup.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 18, 2016, a true and correct copy of the foregoing was served electronically through the CM/ECF electronic filing system on all counsel of record.

/s/ John E. Norris____
Attorney for Plaintiff